In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00739-CV




WILLIAM GRANT DORSETT, Appellant

V.

NANCY SWANSON CROSS, Appellee




On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 671986




DISSENTING OPINION

          I respectfully dissent, because in my opinion the trial court’s judgment should
be reversed and rendered on the grounds urged in appellant’s first two points of error.
          Specifically, I disagree with the majority’s conclusion that the terms of the
Stock Sale Agreement obligated appellant to close the stock purchase transaction if
he did not give notice of his intent to rescind within 30 days after being delivered the
financial documents. According to my reading, the Stock Sale Agreement did not
obligate the appellant to consummate the stock purchase transaction; it simply gave
him the right to do so. I find no provision in the Stock Sale Agreement, including
paragraph number 5, that imposes a time limit for appellant to give notice of intent
to rescind. 
          The Stock Sale Agreement, paragraph 5, provides:DUE DILIGENCE
5. After the records described in Exhibit “A” have been furnished to
Purchaser by the Corporation, Purchaser shall give written notice of
such fact to Sellers’ attorney within three (3) business days therefrom.
Purchaser shall have the right to rescind the transaction by delivering his
written communication to Sellers of his desire to rescind this
Agreement. The Earnest Money shall be forfeited by Purchaser in case
of his decision to rescind; if, however, Purchaser desires to close the
transaction after making such inspection, the Earnest Money shall be
credited to the cash amount Purchaser paid at Closing. Purchaser shall
have thirty (30) days to close the transaction after receipt of the
documents listed in “Exhibit A.”
 
This paragraph provides that “if . . . [the] Purchaser desires to close the transaction”
after making the due diligence inspection, he shall have 30 days after receipt of the
listed documents within which to do so. I find no language in this paragraph or
elsewhere in the Stock Sale Agreement that obligates the Purchaser to consummate
the purchase transaction or which imposes any time limit for his giving notice of his
intent to rescind.
          The evidence is undisputed that appellant elected not to close the transaction
and that he never signed the installment notes or paid the cash down payment.
Although the evidence indicates the stock was transferred into appellant’s name on
the corporate books, it is undisputed that such transfer was effected solely for the
purpose of giving the appellant standing, as a minority stockholder, to gain access to
the company’s financial records so he could make a due diligence investigation. The
appellant’s rights with respect to the stock were fixed by the terms of the Stock Sale
Agreement, and according to my reading, he acquired no ownership rights in the
stock unless and until he closed the stock purchase transaction. Because the appellant
elected not to close the transaction and instead gave notice of his intent to rescind, he
simply forfeited his right to the earnest money deposited with the appellee’s attorney. 
          I recognize that in some cases a purchaser under a contract of sale may be held
liable for the agreed purchase price, not just for the earnest money. See e.g.,
Chambers County v. TSP Development, Ltd., 63 S.W.3rd 835, 838 (Tex. App.—
Houston [14th Dist.] 2001, pet. denied). But in those cases, the contract of sale did
not expressly or impliedly limit the purchaser’s liability to the amount of the earnest
money. Here, the Stock Sale Agreement expressly states that the Purchaser “shall
have the right to rescind the transaction by delivering his written communication to
Sellers of his desire to rescind this Agreement.” The Stock Sale Agreement then
states that “[t]he Earnest Money shall be forfeited by Purchaser in case of his decision
to rescind; if, however, Purchaser desires to close the transaction after making such
inspection, the Earnest Money shall be credited to the cash amount Purchaser paid at
Closing.” In a separate paragraph (no. 7), the Stock Sale Agreement provides that if
the Purchaser fails to close the sale, he will forfeit his earnest money “under any
circumstances.”
          The appellant’s demand note, which was expressly made subject to the terms
of the Stock Sale Agreement, also provides that “[i]n the event Maker elects not to
complete the transaction after his period of due diligence contemplated by the Stock
Sale Agreement and so notifies [Payee], then this Note shall become null and void.” 
          In drafting the terms of the Note and the Stock Sale Agreement, the Sellers
could easily have set a time limit for the appellant to complete the due diligence
investigation and for the appellant to give notice of his intent to rescind. The
appellee’s testimony shows the Sellers consciously decided not to place any time limit
on the Purchaser’s completion of the due diligence because they were uncertain about
how much time would be required to obtain the company’s financial documents. 
Because the parties chose not to impose a time limitation on appellant, this court
should accept their agreement as written. See Wood Motor Co., Inc. v. Nebel, 238
S.W.2d 181, 185 (Tex. 1951) (unambiguous language giving unqualified right to
terminate contract must be enforced as written). 
          Because the Stock Sale Agreement expressly provides that appellant has the
right to rescind the transaction and does not set any time limit for delivering his
written notification to the Sellers stating his desire to rescind, I cannot agree with the
majority’s conclusion that appellant had 30 days from delivery of the documents “to
complete his due diligence and elect either to rescind or to close the transaction.” In
my opinion, the majority’s interpretation is incorrect because the Stock Sale
Agreement provides only that, if the Purchaser decides to close the transaction, he
must do so within 30 days after receipt of the designated financial documents. 
          I also disagree with the majority’s conclusion that the Purchaser was obligated
to exercise “good faith” in completing the due diligence inspection. First, I do not
find any language in the Stock Sale Agreement that obligates the Purchaser to
conduct a due diligence investigation. The Stock Sale Agreement simply gives him
the right to conduct such an investigation. Because the Stock Sale Agreement did not
obligate appellant to conduct the investigation, he obviously had no contractual duty
to complete the investigation in good faith. See Northern Natural Gas Co. v. Conoco,
Inc., 986 S.W.2d 603, 606-07 (Tex. 1998); John Wood Group USA, Inc. v. ICO, Inc.,
26 S.W.3d 12, 17 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). 
          In summary, I believe the undisputed evidence shows the following: (1) the
demand note was expressly made subject to the terms of the Stock Sale Agreement,
and the Note provided it would become null and void if the appellant elected not to
complete the transaction and gave notice of his intent to rescind; (2) the Stock Sale
Agreement gave appellant the right to conduct a due diligence investigation before
deciding whether to close the transaction; (3) the Stock Sale Agreement gave
appellant the right to close the transaction if he did so within 30 days after receipt of
the listed financial documents; (4) the Stock Sale Agreement gave appellant the right
to rescind the transaction but did not impose a time limit for his giving of such notice;
and (5) appellant never closed the transaction, made any payment of cash down
payment, or executed the installment notes; instead he gave the Sellers notice of his
intent to rescind.
          Accordingly, I would hold that appellant’s liability for failing to close the
transaction was the forfeiture of his earnest money, which had been deposited with
the Sellers’ attorney. See Hott v. Pearcy/Christon, Inc., 663 S.W.2d 851, 851 (Tex.
App.—Dallas 1983, writ ref’d n.r.e.) (effect of limiting purchaser’s liability results
in an option to purchase, revocable within a specified term, unless and until some
additional consideration is paid). 
 
                                                                        /s/ Frank G. Evans



                                                                        Justice
 
Panel consists of Justices Hedges, Keyes, and Evans.
Justice Evans dissenting.